IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SUSAN JANE BEEHLER, | ) CASE NO. 5:10 CV 633 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Susan Jane Beehler, for disability insurance benefits (DIB) and supplemental security income (SSI).[1] The parties have consented to magistrate judge's jurisdiction.[2]

Essentially, as will be discussed below, the key issue in this case is whether there is substantial evidence to support the residual functional capacity (RFC) finding of the Administrative Law Judge (ALJ), whose decision became the final decision of the Commissioner. Because I will conclude that substantial evidence does exist to support this finding, the Commissioner's decision will be upheld.

---

[1] ECF # 1.

[2] ECF # 13.

**Facts**

**A.     Background facts; the ALJ's decision**

Beehler, a high school graduate born in 1957 who previously worked as a cook, applied for benefits in 2006.[3] In support of her application, she claimed that she did not have the capacity for light or sedentary work because of multiple physical impairments, as well as depression.[4] Specifically, she relied on reports from treating physician Paul Scheatzle, D.O., who completed an RFC assessment in 2001; treating physician Anne Harper, M.D., who completed a functional capacity evaluation in 2003; and treating physician Bharat Oza, M.D., who completed a functional capacity evaluation in 2008.[5]

The ALJ found first that Beehler had severe impairments consisting of degenerative disc disease of the cervical and lumbar spine and depressive disorder.[6] The ALJ then made the following finding regarding Beehler's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift up to 20 lbs occasionally, and lift and carry up to 10 lbs frequently. She can walk, stand and sit, each, for approximately 6 hours in an 8 hour workday, with normal breaks. However, prolonged standing and walking are limited, meaning that the claimant must be allowed to sit or stand alternatively, at will, provided that she is not off task more than 10 percent of the work period. The claimant is limited to work with simple, routine and repetitive tasks; in a work environment free of fast paced

---

[3] *See*, ECF # 11 Transcript ("Tr.") at 9, 13, 18.

[4] ECF # 14 at 3 (citing record).

[5] *Id*. at 3-4 (citing record).

[6] Tr. at 11.

production requirements; involving only simple, work-related decisions; with few, if any, work place changes.[7]

In determining Beehler's RFC, the ALJ gave no weight to Dr. Scheatzle's opinion on the grounds that it was "unreliable" in light of certain, identified medical findings of Dr. Scheatzle that were inconsistent with the medical record.[8] Further, the ALJ noted but then gave "minimal weight" to Dr. Harper's report for the reason that the opinion "appear[ed] to be based primarily on the claimant's complaints" and is not supported in Dr. Harper's treatment notes.[9] Finally, the ALJ also took note of Dr. Oza's assessment, assigning it "minimal weight" because it was "specifically ... based on 'subjective responses by the claimant, rather than clinical examination.'"[10]

Instead of relying on those sources, the ALJ assigned "great weight" to two assessments from state agency reviewing sources.[11] The articulated reason given by the ALJ was that these assessments – which indicated Beehler was capable of doing light work – were both "supported by the evidence of record which shows mild pathology on MRI and a normal EMG of the claimant's right leg."[12]

---

[7] *Id.* at 13.

[8] *Id.* at 17.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

Having made the above-noted RFC finding based on the stated weight given to the various reports, the ALJ determined that Beehler was incapable of performing her past relevant work as cook, dishwasher, and food preparer.[13]

Considering the medical-vocational guidelines in Appendix 2 of the regulations, and based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Beehler could perform.[14] The ALJ, therefore, found Beehler not under a disability.[15]

**B.   Claimant's argument**

Beehler asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Beehler argues that because "all treating and examining physicians who completed functional capacity assessments limited [Beehler] to less than a full range of sedentary work," the "ALJ erred by substituting the opinions of non-examining physicians for the opinions of the treating and examining physicians...."[16]

---

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] ECF # 14 at 2.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence standard*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[18]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician and good reason rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

---

[20] 20 C.F.R. § 404.1527(d)(2).

[21] *Id.*

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

-6-

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[29] The court noted that the regulation expressly contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[36] Second, the ALJ must identify for the record evidence supporting that finding." [37] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[38]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[39] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[40] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[41] or that objective medical evidence does not support that opinion.[42]

---

[36] *Wilson*, 378 F.3d at 546.

[37] *Id.*

[38] *Id.*

[39] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[42] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[43] The Commissioner's *post hoc* arguments on judicial review are immaterial.[44]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[45]

- the rejection or discounting of the weight of a treating source without assigning weight,[46]

---

[43] *Blakley*, 581 F.3d at 407.

[44] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[45] *Blakley*, 581 F.3d at 407-08.

[46] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[47]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[48]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[49] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[50]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[51] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[52] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[53]

---

[47] *Id.*

[48] *Id.* at 409.

[49] *Hensley*, 573 F.3d at 266-67.

[50] *Friend*, 375 F. App'x at 551-52.

[51] *Blakley*, 581 F.3d 399.

[52] *Id*. at 409-10.

[53] *Id*. at 410.

In *Cole v. Astrue*,[54] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[55]

**B.    Application of standards**

Before addressing the issue of whether the ALJ followed the treating physician and good reason rule, I make several preliminary observations.

First, I note that at the oral argument both counsel confirmed that if the correct RFC finding in this case was sedentary, then Beehler would have been found disabled under the medical-vocational guidelines. However, as Beehler's counsel further acknowledged, this determination would only apply to her claim for SSI, since at the time that Beehler's insured status for disability benefits expired in 2005, she was less than 50 years old and so would not be found disabled for DIB purposes under the guidelines with an RFC finding that she was capable of sedentary work.

Next, I observe that although Beehler's brief limited her argument that the ALJ did not properly consider the opinions of treating sources to the three physician referenced above, she expanded that issue at the oral argument to include the opinion prepared by Daryl

---

[54] *Cole v. Astrue*, Case No. 09-4309, 2011 WL 5456617 (6th Cir. Sept. 22, 2011) (slip opinion).

[55] *Id.* at 11.

Adelman, an examining physical therapist.[56] Adelman was an examining source, not a treating source, as were the other three. In addition, and more important, as a non-physician, a physical therapist is not an accepted medical source under 20 C.F.R. § 416.913(a) whose opinion must be given controlling weight or have any lesser weight sufficiently explained, but rather, under § 416.913(d)(1), is considered a non-listed medical source whose opinion "may also [be] use[d]" to show how an impairment affects a claimant's ability to work. That said, the ALJ here did note Adelman's evaluation and assigned it minimal weight because, among other things, it was conducted "after acute care" and so "reflects significant self-limiting behavior" by Beehler.[57] Accordingly, for the foregoing reasons, Beehler's argument concerning the ALJ's treatment of her therapist's RFC evaluation does not impact my reasoning on the core claim in this case.

As to that core claim, I find that the ALJ here complied with the requirements of the treating physician and good reason rule. Specifically, as detailed above, the ALJ here took notice of all three of the treating source opinions cited by Beehler; gave reasons for assigning those opinions less than controlling weight; and supported the reasons given with specific references to evidence of record such as would permit meaningful review of that decision. Given the ALJ's performance in this regard, I find that he has followed the treating source and good reason rule, and that the resulting decision as to Beehler's RFC is supported by substantial evidence.

---

[56] *See*, tr. at 625, 629.

[57] Tr. at 17.

I do acknowledge that the record also contains evidence that could support Beehler's view of her residual functional capacity. However, as the Sixth Circuit stated in *Buxton v. Halter*,[58] there exists a "zone of choice" within which the Commissioner may act without interference from a reviewing court.[59] Thus, although there may be evidence of record that might lead a reviewing court to question whether it would have decided a question the same way as did the Commissioner, if there is also evidence that a reasonable mind might accept as adequate to support the finding of the Commissioner, the court is constrained to affirm the Commissioner's decision.

Because this case falls within that zone of choice, I must affirm.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Beehler had no disability. Accordingly, the decision of the Commissioner denying Beehler disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated:  November 22, 2011                              s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[58] *Buxton*, 246 F.3d 762.

[59] *Id*. at 772.